**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., A NEW JERSEY Corporation and Subsidiary of STRYKER CORP., <br><br> Plaintiff, <br><br> v. <br><br> BRETT SARKISIAN, et al., <br><br> Defendants. | Civil Action No.: 14-3449 (CCC) <br><br> **OPINION** |

**CECCHI, District Judge.**

Before the Court is Plaintiff Howmedica Osteonics Corporation's ("Plaintiff" or "Howmedica") appeal, pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c), of Magistrate Judge Falk's April 20, 2015 Order granting the motions of Defendants Brett Sarkisian, Keegan Freeman, Michael Nordyke, Taylor Smith, Bryan Wyatt, Depuy Orthopaedics, Inc., and Golden State Orthopaedics, Inc. (collectively, "Defendants") to transfer venue. ECF No. 77. Defendants oppose this appeal. ECF Nos. 78-80. In addition, on February 10, 2016, Depuy Orthopaedics, Inc. submitted to the Court supplemental authority, ECF No. 90, to which Plaintiff responded, ECF No. 91. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, Judge Falk's Order is affirmed.

---

[1] The Court considers any arguments not presented on appeal by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Howmedica's allegation that five of its former employees breached restrictive covenants in their employment agreements with Howmedica[2] by soliciting its clients in Northern California for the benefit of its competitors, Defendants DePuy Orthopaedics, Inc. ("DePuy") and Golden State Orthopaedics, Inc. ("GSO"). Am. Compl. ¶¶ 1, 60, 74-91, 92-130.

Howmedica is a New Jersey corporation engaged in the business of designing, manufacturing, and marketing orthopedic implants used in the reconstruction of various joints. Id. ¶ 22. It is a subsidiary of Stryker, a Michigan corporation. See id. at 1; Stryker Corporation, Form 8-K Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Jan. 22, 2016). Defendant DePuy is an Indiana corporation, id. ¶ 19, and Defendant GSO is a California corporation, id. ¶ 20. DePuy and GSO compete directly with Howmedica in the orthopedic implant industry. Id. ¶ 64.

Defendants Brett Sarkisian, Keegan Freeman, Michael Nordyke, Taylor Smith, and Bryan Wyatt (collectively, the "California Individuals") are citizens of California. Id. ¶¶ 14-18. The California Individuals worked as sales representatives for Howmedica in and around Bakersfield, California and Fresno, California. Id. ¶ 1.

All of the California Individuals signed employment agreements with Howmedica and Stryker.[3] Id. ¶ 39. All of those employment agreements contain confidentiality, non-solicitation,

---

[2] Throughout its Amended Complaint, Plaintiff Howmedica consistently refers not to "Howmedica" but to "Stryker." See Am. Compl. As discussed above, Stryker is the name of Howmedica's parent company, which is not a party to this action. Id. at 1. Plaintiff explains in its objection to Judge Falk's Order that "Stryker" is also Howmedica's trade name. See ECF No. 77-1, at 25.

[3] The California Individuals also argue that because Nordyke, Smith, and Wyatt signed agreements with "Stryker," not Howmedica, Howmedica lacks standing to enforce those

and forum-selection clauses. Id. ¶¶ 22, 45, 48. However, not all of those agreements select the same forum. The agreements signed by Sarkisian, Freeman, Smith, and Wyatt select New Jersey as the forum for disputes arising out of the agreements. Id. ¶ 22. Nordyke's agreement, however, selects Michigan as the forum. Id. ¶ 41; Ex. B. Defendants DePuy and GSO did not enter into any agreement with Plaintiff.

Plaintiff alleges that in April 2014, the California Individuals resigned from Howmedica in California and took employment in California with "DePuy and/or GSO," Howmedica's direct competitors. Id. ¶ 4. Plaintiff further alleges the California Individuals breached their employment agreements and their duties of loyalty to Howmedica by soliciting a number of its California-based customers for the benefit of DePuy and GSO. Id. ¶ 60.

Plaintiff commenced this action on May 30, 2014, ECF No. 1, and filed an Amended Complaint on October 16, 2014, ECF No. 29. Defendants moved to dismiss Plaintiff's Amended Complaint and, in the alternative, to transfer venue to the U.S. District Court for the Northern District of California. ECF Nos. 52, 54, 55. Plaintiff opposed all motions. ECF Nos. 61-63. Judge Falk granted Defendants' motions to transfer venue on April 20, 2015. ECF No 76. Plaintiff appealed that decision on May 4, 2015. ECF No. 77.

## II.   LEGAL STANDARD

### A.   Appeal of a Magistrate Judge's Decision

A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is a non-dispositive motion. See, e.g., Siemens Fin. Servs., Inc. v. Open Advantage MRI II, No. 07-1229, 2008 WL 564707, at

---

agreements. As this Court affirms Judge Falk's decision granting Defendants' motion to transfer, it need not address that argument.

3

*2 (D.N.J. Feb. 29, 2008) (internal citations omitted).  A magistrate judge may hear and determine any non-dispositive pretrial motion pending before the district court.  28 U.S.C. § 636(b)(1)(A).  A district court will only reverse a magistrate judge's decision on such motions if the decision is "clearly erroneous or contrary to law."  Id.; Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

A magistrate judge's decision is clearly erroneous where the reviewing court, after considering the entirety of the evidence, "is left with the definite and firm conviction that a mistake has been committed."  Romero v. Ahsan, No. CIV. 13-7695 FLW, 2015 WL 5455838, at *3 (D.N.J. Sept. 16, 2015) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).  "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review."  Id. (quoting Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000)).  A magistrate judge's decision is "contrary to law if the magistrate judge has misinterpreted or misapplied applicable law."  Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citing Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998)).  The burden of showing that the magistrate judge's decision is contrary to law and clearly erroneous rests with the appealing party.  Id. (internal citation omitted).

**B.    Transfer of Venue**

Federal courts may transfer a case to another district "where it may have been brought,"[4]

---

[4] A case may have been brought in a transferee district if "the transferee district has personal jurisdiction over all of the Defendants and . . . venue would be proper in the transferee district." Samuels v. Medytox Solutions, Inc., No. CIV. 13-7212 SDW, 2014 WL 4441943, at *6 (D.N.J. Sept. 8, 2014). The parties do not dispute that this case could have been brought in the Northern District of California. Moreover, the Court finds this action may have been brought in the Northern District of California for the following reasons. First, California courts have personal jurisdiction over Defendants because the California Individuals and GSO are domiciled in California and DePuy concedes that it is subject to personal jurisdiction in California. See DePuy's Br. in Support, ECF No. 54, at 22, 25; Calif. Individuals' Br. in Support, ECF No. 52-2,

4

to serve "the interests of justice," or for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). "There is no definitive formula or list of the factors to consider when deciding a motion to transfer." Landmark Fin. Corp. v. Fresenus Med. Care Holdings, Inc., 2010 WL 715454, at *2 (D.N.J. Mar. 1, 2010) (citing Jumara v. State Farm Ins. Co., 55 F.3d. 873, 879 (3d. Cir. 1995)). The Third Circuit has nevertheless explained that § 1404(a) implicates certain "public" and "private" interests. The public interests include: (1) enforceability of the Court's judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the level of congestion in the respective forums; (4) the local interest in deciding local controversies at home; (5) the public policies of the forum; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 55 F.3d. at 879. The private interests include: (1) the plaintiff's preferred forum as expressed by the original forum choice; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience and availability of witnesses; and (6) the location of books and records. Id.

Recently, the U.S. Supreme Court held that a court may consider only the public-interest factors in its § 1404(a) analysis where the parties have agreed to a valid, mandatory forum-selection clause. See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 581 (2013) (internal citation and quotation omitted). The Court noted that "because [the

---

at 30. Second, venue is proper in the Northern District of California because a substantial part of the events or omissions giving rise to the claim occurred there. 28 U.S.C. § 1391(b)(2). Specifically, it was in the Northern District of California that the California Individuals performed their services for Plaintiff, the California Individuals terminated their employment with Plaintiff, and all Defendants allegedly solicited Plaintiff's customers. See Am. Compl. ¶¶ 1, 4, 6-8, 60-62; ECF No. 76 at 16. Further, although Plaintiff argues the New Jersey forum-selection clauses in the contracts Sarkisian, Freeman, Smith, and Wyatt signed require the parties to litigate in New Jersey, it does not argue that venue is otherwise improper in the Northern District of California.

public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." See id. at 582.

The Atlantic Marine Court did not, however, address the effect of conflicting, valid forum-selection clauses in separate contracts between the parties. Federal courts are generally hesitant to enforce conflicting forum-selection clauses "out of concern for wasting judicial and party resources." Samuels v. Medytox Solutions, Inc., No. CIV.A. 13-7212 SDW, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014) (citing Jones v. Custom Truck & Equip., LLC, No. 10-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011)). The Atlantic Marine Court also did not consider a situation where some parties entered into forum-selection agreements while others did not. See In re Rolls Royce Corp., 775 F.3d 671, 679 (5th Cir. 2014). Accordingly, since the decision in Atlantic Marine, courts have found consideration of the private-interest factors is appropriate where (1) there are competing, mandatory forum-selection clauses, see Samuels, 2014 WL 4441943, at *8, or (2) some parties have not agreed to adjudicate disputes in a particular forum, see In re Rolls Royce Corp., 775 F.3d at 681.

## III. DISCUSSION

Judge Falk's Opinion noted the facts of the instant case were distinguishable from Atlantic Marine but found that transfer to the Northern District of California was appropriate under both the Atlantic Marine framework and the traditional transfer analysis. For the reasons set forth below, this Court finds Judge Falk's decision was neither clearly erroneous nor contrary to law.

### A. Under Atlantic Marine, the Public-Interest Factors Support Transfer

Applying Atlantic Marine, Judge Falk identified a number of exceptional public-interest considerations supporting transfer to the Northern District of California. This Court agrees.

The Court finds the following factors weigh in favor of transfer. Regarding the first

6

factor—enforceability of the court's judgment—the Court finds that, if Plaintiff prevails, "it will be easier to obtain judgment over [Defendants] in California because [the majority of Defendants] reside[] in that state." PNY Techs., Inc. v. Miller, Kaplan, Arase & Co., LLP, No. CIV.A. 14-4150 ES, 2015 WL 1399199, at *9 (D.N.J. Mar. 24, 2015) (citing United States ex rel Groundwater Tech., Inc. v. Sevenson Envtl. Servs., Inc., No. 00–311, 2000 WL 33256658, at *5 (D.N.J. 2000)).

Concerning the second factor, the Court finds that, as most of the parties and key non-party witnesses are located in California, see ECF No. 76 at 17, a transfer to California will promote "easier, more expeditious, and less expensive litigation," PNY Technologies, 2015 WL 1399199, at *9. Thus, that factor also militates in favor of transfer.

Next, because California's interest in the instant dispute outweighs New Jersey's, the fourth factor also supports a transfer to California. As Judge Falk noted, this case primarily involves the rights of California citizens and the cause of action arose in California. ECF No. 76 at 18. "Because . . . the alleged culpable conduct occurred in [California], not New Jersey, [California] has a stronger public interest in adjudicating this dispute." Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 536 (D.N.J. 2000) (citations omitted). In addition, this Court agrees with Judge Falk that California has "an overriding public interest in minimizing the interruption to the schedules of the [seven to ten] non-party surgeons" who practice trauma and reconstructive medicine in California and are indispensable witnesses in the case.[5] ECF No. 76 at 17 (citing Calif. Individuals' Br. in Support at 33-34). In light of these considerations, the fact that

---

[5] Although the Atlantic Marine Court suggested "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses," the nonparty surgeons' profession renders their participation in the instant action a matter of public, not merely private, concern because of California's public interest in the surgeons' potentially life-saving work. Atlantic Marine, 134 S. Ct. at 582.

7

the allegedly injured Plaintiff is a New Jersey corporation is not dispositive. See PNY Technologies, Inc. v. Miller, Kaplan, Arase & Co., LLP, No. CIV.A. 14-4150 ES, 2015 WL 1399199, at *9 (D.N.J. Mar. 24, 2015) (finding California's public interest in the dispute outweighed New Jersey's even though the plaintiff was a New Jersey corporation).

Regarding the fifth factor—public policy—the Court finds the public interest in promoting judicial economy also strongly supports a transfer. Declining to transfer and enforcing the New Jersey forum-selection clauses could require this Court to create wasteful parallel litigation for two reasons. First, because Nordyke's employment contract selected Michigan and not New Jersey, this Court could find Nordyke must be dismissed from the litigation, potentially creating "two separate lawsuits which concern the same underlying events." Blissfield Mfg. Co. v. Blue H2O Solutions, LLC, No. 12-15610, 2013 WL 5450289, at *5 (E.D. Mich. Sept. 30, 2013) (declining to enforce competing forum-selection clauses to avoid creating duplicative litigation in two forums); see also Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 455 (D.N.J. 1999) (transferring venue where "the interests of justice, judicial economy and the avoidance of the possibility of inconsistent results require one District Court preside over these cases"). Second, because the California Individuals entered into forum-selection agreements but GSO and DePuy did not, "the section 1404 [transfer] analysis, modified by Atlantic Marine, might point in the direction of one judicial district for the forum-selection clause parties, and in another direction for the parties without a preexisting agreement." In re Rolls Royce Corp., 775 F.3d at 679. The Fifth Circuit has found this scenario "suggests that the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." Id.

The third and sixth factors are neutral in this Court's analysis. The third factor—the

8

relative level of congestion in the available forums—is neutral because the caseloads in this District and in the Northern District of California are comparable. The sixth factor is also neutral because this Court is confident in the ability of a federal judge in the Northern District of California to apply the appropriate state's law.

Accordingly, the public-interest factors do not support keeping this case in New Jersey. Therefore, this Court agrees with Judge Falk that the public-interest factors weigh in favor of transfer to the Northern District of California and that transfer is appropriate under the Atlantic Marine framework.

### B. The Private-Interest Factors Also Weigh in Favor of Transfer

To the extent this case is factually distinguishable from Atlantic Marine, this Court finds the private-interest factors also weigh in favor of transfer. Since Atlantic Marine, courts have held consideration of private-interest factors is appropriate where: (1) the parties have agreed to conflicting, mandatory forum-selection clauses, see Samuels, 2014 WL 4441943, at *8, or (2) where some of the parties have not entered into any forum-selection agreement, see In re Rolls Royce Corp., 775 F.3d at 681.

Both scenarios are present here. First, regarding the existence of conflicting, mandatory forum-selection clauses, the forum-selection clauses in Sarkisian's, Smith's, Freeman's, and Wyatt's employment agreements name New Jersey, but the forum-selection clause in Nordyke's agreement names Michigan. See Am. Compl. Ex. A ¶ 6(h), Ex. B ¶ 6(h), Ex. C ¶ 8.2, Ex. D ¶ 8.2, Ex. E ¶ 8.2. And, because each of those clauses states all litigation between the parties arising from the agreement either "shall" or "will" take place in the designated forum, id., it appears those

9

clauses are mandatory.[6] See, e.g., Asphalt Paving Sys., Inc. v. Gen. Combustion Corp., No. CIV.A. 13-7318 JBS, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (finding "the inclusion of the word "shall" sufficiently evinces a forum selection clause's mandatory nature" (citing Wall St. Aubrey Golf, LLC v. Aubrey, 189 Fed. App'x 82, 85 (3d Cir. 2006))); Suhre Assocs., Inc. v. Interroll Corp., No. CIV.A. 05-4332(MLC), 2006 WL 231675, at *2 (D.N.J. Jan. 31, 2006) (finding a forum-selection clause stating "that litigation concerning the Contract 'will' be instituted in [North Carolina] . . . is mandatory"). Thus, "the parties have not unambiguously agreed to litigate in a particular forum as the parties did in Atlantic Marine." Samuels, 2014 WL 4441943, at *8.

Second, concerning a situation where not all parties entered into a forum-selection agreement, GSO and DePuy did not enter into any forum-selection contract with Plaintiff. Although the Third Circuit has not explicitly considered such a situation, the Fifth Circuit has noted:

> [T]he [transfer] analysis differs when there are parties who have not entered into any forum-selection contract. First, Atlantic Marine was premised on the fact that the parties had agreed in advance where their private litigation interests lie, and the reviewing court had no cause to disturb those expectations. A litigant not party to such a contract did not, of course, make any such advance agreements and their private interests must still be considered by the district court.

In re Rolls Royce Corp., 775 F.3d at 679. Having found the instant case may be distinguished from the facts of Atlantic Marine, this Court may consider the private-interest factors in its transfer

---

[6] Although the California Individuals' contend the forum-selection clauses in Nordyke's, Smith's, and Freeman's employment agreements are permissive, see Calif. Individuals' Br. in Support, ECF No. 52-2 at 21, the Court notes those clauses state "any and all litigation . . . relating to this Agreement will take place exclusively" in the designated forum, Am. Compl. Ex. C ¶ 8.2, Ex. D ¶ 8.2, Ex. E ¶ 8.2.

10

analysis.

Judge Falk correctly found that, on balance, the six private-interest factors also weigh in favor of a transfer to the Northern District of California. The second, third, fourth, and fifth factors clearly support transfer. The second factor, Defendants' choice of forum, favors a transfer because Defendants have moved to transfer this litigation to the Northern District of California. The third factor—the locus of events giving rise to Plaintiff's claims—also points clearly toward a transfer to California: the California Individuals performed their services for Plaintiff in California, the California Individuals terminated their employment with Plaintiff in California, and Defendants allegedly solicited Plaintiff's customers in California. See Am. Compl. ¶¶ 1, 4, 6-8, 60-62; ECF No. 76 at 16. Accordingly, California is "the center of gravity of the accused activity." See NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 321 (D.N.J. 1998) (citations omitted).

Next, the fourth and fifth factors—convenience of the parties and witnesses—likewise weigh heavily in favor of a transfer. Here, six of the seven Defendants are located in California and only Plaintiff is located in New Jersey. See Am. Compl. ¶¶ 13-20. Defendants have also identified fifteen nonparty witnesses who live in California and would testify about events surrounding Plaintiff's claims. See Calif. Individuals' Br. in Support, ECF No. 52-2, at 33-34. In contrast, Plaintiff does not appear to identify any nonparty witnesses located in New Jersey. In evaluating the convenience of witnesses, courts have held the location of nonparty witnesses is entitled to particular consideration. See LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 591 (D.N.J. 2001); Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp. 2d 321, 333 (D. Del. 2009).

Although the first factor—Plaintiff's preferred forum—weighs against a transfer,

11

Plaintiff's choice "is not conclusive; if it were, then courts would have no need to perform a multi-factor analysis." Samuels, 2014 WL 4441943, at *8 (citing Jumara, 55 F.3d at 879) Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 515 (D.N.J. 1998) (A plaintiff's choice of forum "is simply a preference; it is not a right."). Indeed, on balance, the interest of the seven Defendants in litigating this matter in California would seem to outweigh one Plaintiff's interest in remaining in New Jersey.

Finally, the sixth factor—the location of relevant books and records—does not appear to favor either venue. Plaintiff argues that relevant financial statements, personnel files, and other documents are in New Jersey. See, e.g., Pl. Br. on Appeal, ECF No. 77-1, at 29. Defendants, however, contend that most, if not all, relevant documents are located in California. See Calif. Individuals' Br. in Support at 21; GSO's Br. in Support at 34 n.34. As nothing indicates relevant documents could not be made available in either this District or the Northern District of California, the Court finds the sixth factor is neutral.

In light of the foregoing considerations, the Court finds the totality of the private-interest and public-interest factors weighs in favor of granting Defendants' motions to transfer. Therefore, even under a traditional § 1404 transfer analysis, transfer to the Northern District of California is appropriate.

## IV.   **CONCLUSION**

For the reasons set forth above, this Court concludes Judge Falk's decision is neither clearly erroneous nor contrary to law and transfer of venue to the Northern District of California is proper. The April 20, 2015 Order will be affirmed. An appropriate Order accompanies this Opinion.

DATED: August 26, 2016

                                                **CLAIRE C. CECCHI, U.S.D.J.**

13